**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **ISMATILLO GIYOSOV,**<br>**Petitioner,**<br>**v.**<br>**JAMAL J. JAMISON, *et al*.,**<br>**Respondents.** | **CIVIL ACTION NO. 26-0298** |

# MEMORANDUM OPINION

**Rufe, J.** **January 27, 2026**

Petitioner Ismatillo Giyosov has petitioned for release under 28 U.S.C. § 2241 after he was detained by the Department of Homeland Security ("DHS") under the Immigration and Nationality Act ("INA"). He argues that the DHS's imposition of mandatory detention without a bond hearing rests upon an unlawful interpretation of 8 U.S.C. § 1225(b)(2) and denies him due process.[1] The government opposes the petition and argues that the Court lacks jurisdiction, citing three INA statutory provisions.[2] The Third Circuit's recent decision in *Khalil v. President, United States of America*[3] is therefore relevant, as it expanded the scope of one such jurisdiction-stripping provision, 8 U.S.C. § 1252(b)(9).

The Court concludes that *Khalil* is distinguishable because Giyosov's petition does not present legal or factual questions that can be meaningfully reviewed alongside review of a final order of removal. The Court rejects the government's other jurisdictional arguments and further

[1] Petition [Doc. No. 1].

[2] Gov. Response at 6-10 [Doc. No. 4].

[3] --- F.4th ---, Nos. 25-2162 & 25-2357, 2026 WL 111933 (3d Cir. Jan. 15, 2026).

concludes that Giyosov does not qualify for mandatory detention under 8 U.S.C. § 1225(b)(2) because he is not an "applicant for admission." The petition will be granted.

## I. BACKGROUND

Giyosov is a citizen of Uzbekistan who entered the United States at the Southern Border on September 24, 2023.[4] Upon arriving at the border, he was apprehended by the DHS and briefly detained.[5] He was then released on his own recognizance on September 26, 2023.[6] On that same day, Giyosov was served with a Notice to Appear in Removal Proceedings, which charged him with having entered the United States without admission or parole.[7] Later, Giyosov timely filed a Form I-589 Application for Asylum based on alleged persecution that he would face in Uzbekistan.[8]

On January 14, 2026, Giyosov was arrested by Immigration and Customs Enforcement ("ICE").[9] He had been living in Philadelphia before his arrest and is currently detained at the Philadelphia Federal Detention Center ("FDC").[10] As alleged in the petition, he has no criminal history and had worked in Pennsylvania prior to being arrested by ICE.[11] He has not received a bond hearing.[12] Giyosov's detention is the product of a new DHS policy, under which "individuals present in the United States without admission or parole are now treated as

---

[4] Petition ¶¶ 15, 49 [Doc. No. 1]; Notice to Appear [Doc. No. 1-3 at p. 4] (stating that Giyosov "arrived in the United States at or near San Ysidro, CA, on or about September 24, 2023").

[5] Petition ¶ 49 [Doc. No. 1].

[6] Order of Release on Recognizance [Doc. No. 1-3 at p. 3].

[7] Notice to Appear [Doc. No. 1-3 at p. 4].

[8] Petition ¶ 51 [Doc. No. 1].

[9] Petition ¶ 50 [Doc. No. 1].

[10] Petition ¶¶ 49-50 [Doc. No. 1]; *see also* ICE Detainee Locator [Doc. No. 1-3 at p. 8].

[11] Petition ¶ 53 [Doc. No. 1].

[12] Petition ¶ 54 [Doc. No. 1].

applicants for admission subject to mandatory detention under § 1225(b)(2) rather than discretionary detention under § 1226(a)."[13] The Board of Immigration Appeals ("BIA") adopted this interpretation in *Matter of Yajure Hurtado*.[14]

On January 16, 2026, Giyosov filed the instant petition for a writ of habeas corpus under 28 U.S.C. § 2241.[15] As this Court has done in recent § 2241 habeas cases filed by ICE detainees, it ordered the government to show cause why Giyosov's petition should not be granted and scheduled a hearing on the matter.[16] Thereafter, by stipulation of the parties, the Court cancelled the show cause hearing and resolved to decide the case on the briefs, as the parties requested.[17]

## II. LEGAL STANDARD

Federal district courts are authorized to grant a § 2241 motion where the petitioner is detained "in violation of the Constitution or laws or treaties of the United States."[18] The petitioner has the burden of showing that the detention violates the Constitution of the United States or federal law.[19]

## III. DISCUSSION

Giyosov's habeas petition prompts consideration of two issues. First, as a threshold matter, the Court must consider whether the INA's limits on judicial review divest the Court of jurisdiction. Second, if the Court has jurisdiction, it must reach the merits issue of whether the

---

[13] *Yilmaz v. Warden of the Fed. Det. Ctr. Phila.*, No. 25-6572, 2025 WL 3459484, at *1 (E.D. Pa. Dec. 2, 2025) (quoting *Ndiaye v. Jamison*, No. 25-6007, 2025 WL 3229307, at *2 (E.D. Pa. Nov. 19, 2025)).

[14] 29 I. & N. Dec. 216 (B.I.A. 2025); *see* Petition ¶ 28 [Doc. No. 1].

[15] Petition [Doc. No. 1].

[16] 1/20/26 Order [Doc. No. 2].

[17] 1/21/26 Stipulation and Order [Doc. No. 7].

[18] 28 U.S.C. § 2241(c)(3); *Demore v. Kim*, 538 U.S. 510, 523 (2003) ("[T]he Fifth Amendment entitles [noncitizens] to due process of law in deportation proceedings." (citations and quotation marks omitted)).

[19] *See Goins v. Brierley*, 464 F.2d 947, 949 (3d Cir. 1972).

mandatory detention provided for in 8 U.S.C. § 1225(b)(2) extends to noncitizens who, despite not being admitted or paroled, have resided in the United States for an extended period.

In recent months, these two questions have been confronted repeatedly by district courts. Those courts have ruled resoundingly in favor of the ICE-detainee petitioners. In this District, each of the dozens of decisions addressing the questions raised by Giyosov's petition has found that the jurisdiction-stripping provisions of the INA do not apply and that the scope of § 1225(b)(2) does not extend to individuals who are similarly situated to Giyosov.[20] Even so, "[t]his Court considers each case on an *ad hoc* basis, and its rulings turn on the facts of each case at issue."[21] Further, in analyzing the issues before it, the Court is mindful of the Third Circuit's recent decision in *Khalil*,[22] which clarifies the proper interpretation of 8 U.S.C. § 1252(b)(9), one of the three INA jurisdiction-stripping statutes that the government cites in its brief.

[20] *See, e.g., Demirel v. Fed. Det. Ctr. Phila.*, No. 25-5488, 2025 WL 3218243 (E.D. Pa. Nov. 18, 2025) (noting that, as of November 18, 2025, 282 of 288 district court decisions had found that the application of § 1225(b)(2) to noncitizens residing in the United States is unlawful); *Cantu-Cortes v. O'Neill*, No. 25-6338, 2025 WL 3171639 (E.D. Pa. Nov. 13, 2025); *Kashranov v. Jamison*, No. 25-5555, 2025 WL 3188399 (E.D. Pa. Nov. 14, 2025); *Ndiaye v. Jamison*, No. 25-6007, 2025 WL 3229307 (E.D. Pa. Nov. 19, 2025); *Patel v. McShane*, No. 25-5975, 2025 WL 3241212 (E.D. Pa. Nov. 20, 2025); *Centeno Ibarra v. Warden of the Fed. Det. Ctr. Phila.*, No. 25-6312, 2025 WL 3294726 (E.D. Pa. Nov. 25, 2025); *Flores Obando v. Bondi*, No. 25-6474, 2025 WL 3452047 (E.D. Pa. Dec. 1, 2025); *Yilmaz v. Warden of the Fed. Det. Ctr. Phila.*, No. 25-6572, 2025 WL 3459484 (E.D. Pa. Dec. 2, 2025); *Conde v. Jamison*, No. 25-6551, 2025 WL 3499256 (E.D. Pa. Dec. 5, 2025); *Bhatia v. O'Neill*, No. 25-6809, 2025 WL 3530075 (E.D. Pa. Dec. 9, 2025); *Anirudh v. McShane*, No. 25-6458, 2025 WL 3527528 (E.D. Pa. Dec. 9, 2025); *Picon v. O'Neill*, No. 25-6731, 2025 WL 3634212 (E.D. Pa. Dec. 15, 2025). There have been a multitude of additional decisions ruling against the government since December 15, 2025. Gov't Resp. at 2 n.1 [Doc. No. 4.]; *see, e.g.*, *Kanaut v. Rose*, No. 25-6869, 2026 WL 36690 (E.D. Pa. Jan. 6, 2026); *Francois v. Noem*, No. 25-7334, 2026 WL 27565 (E.D. Pa. Jan. 5, 2026); *Lara Cordon v. Jamison*, No. 25-6937, 2025 WL 3756948 (E.D. Pa. Dec. 29, 2025); *Kumar v. McShane,* No. 25-6238, 2025 WL 3722005 (E.D. Pa. Dec. 23, 2025).

[21] *Diallo v. Bondi*, No. 25-7421, 2026 WL 36534, at *2 (E.D. Pa. Jan. 6, 2026).

[22] --- F.4th ---, Nos. 25-2162 & 25-2357, 2026 WL 111933 (3d Cir. Jan. 15, 2026).

### A. JURISDICTION

The government argues that the Court lacks jurisdiction to review Giyosov's petition based on 8 U.S.C. § 1252(g), 8 U.S.C. § 1252(a)(2)(B)(ii), and 8 U.S.C. § 1252(b)(9).[23] The first two provisions do not apply. Section 1252(g) bars review of "any cause or claim . . . arising from the decision or action of the Attorney General to [1] commence proceedings, [2] adjudicate cases, or [3] execute removal orders against any alien under this chapter."[24] The Third Circuit has explained that § 1252(g) "does not sweep broadly. It reaches only these three specific actions, not everything that arises out of them."[25] Therefore, it does not reach Giyosov's petition, which only challenges his detention without a bond hearing, not the commencement of removal proceedings. Similarly, the limit on federal review in § 1252(a)(2)(B)(ii) concerns only a "decision or action of the Attorney General or the Secretary of Homeland Security" that is committed to those officials' discretion.[26] Because "the extent of the [government's] authority under the . . . detention statute[s] . . . is not a matter of discretion," this provision does not preclude the Court from considering Giyosov's petition.[27]

As to the third statutory provision, 8 U.S.C. § 1252(b)(9), the *Khalil* decision requires the Court to revisit its significance. This provision states:

> Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this

---

[23] Gov. Response at 6-10 [Doc. No. 4].

[24] 8 U.S.C. § 1252(g).

[25] *Tazu v. Att'y Gen. U.S.*, 975 F.3d 292, 296 (3d Cir. 2020); *see also Reno v. Am.-Arab Anti Discrimination Comm.*, 525 U.S. 471, 482 (1999) ("It is implausible that the mention of three discrete events along the road to deportation was a shorthand way of referring to all claims arising from deportation proceedings.").

[26] 8 U.S.C. § 1252(a)(2)(B)(ii).

[27] *Zadvydas v. Davis*, 533 U.S. 678, 688 (2001).

> subchapter shall be available only in judicial review of a final order under this section.[28]

In *E.O.H.C. v. Secretary of United States Department of Homeland Security*, the Third Circuit held that this provision "does not strip jurisdiction when aliens seek relief that courts cannot meaningfully provide alongside review of a final order of removal."[29]

In *Khalil*, the Third Circuit narrowed its *E.O.H.C.* holding. *Khalil* concerned a lawful permanent resident who was detained under 8 U.S.C. § 1227(a) following his public advocacy of Palestinian human rights, which the government viewed to "have potentially serious adverse foreign policy consequences."[30] Invoking 28 U.S.C. § 2241, the petitioner sought to "enjoin [his] detention and removal as illegal" under the First and Fifth Amendments.[31] He later alleged that the government's actions against him also violated the Administrative Procedures Act ("APA") and *Accardi* doctrine, relied on unconstitutionally vague INA provisions, and resulted in detention that was "impermissibly punitive."[32] The Third Circuit held that despite the petitioner's inability to remedy the *injury* of his alleged illegal detention alongside review of a final order of removal, the petitioner could still obtain meaningful resolution of the *legal or factual questions* implicated by his detention at that later juncture by filing a petition for review ("PFR").[33] Indeed, the court reasoned, the petitioner's arguments against his detention under the First Amendment, Fifth Amendment, APA, and *Accardi* doctrine, were "matters on which the validity of the final

---

[28] 8 U.S.C. § 1252(b)(9).

[29] 950 F.3d 177, 186 (3d Cir. 2020).

[30] *Khalil*, 2026 WL 111933, at *1-2.

[31] *Id.* at *2.

[32] *Id.* at *3.

[33] *Id.* at *9-11.

order is contingent,"[34] making them proper to be channeled into a PFR to avoid "the very 'piecemeal litigation' that § 1252(b)(9) was designed to prevent."[35] Although the petitioner also independently challenged his detention as impermissibly punitive, the Court held that this claim, like the others, was barred by § 1252(b)(9) because it merely "repackage[d]" his substantive arguments against removal.[36]

The same is not true here. Giyosov's argument that he was unlawfully detained without a bond hearing under 8 U.S.C. § 1225(b)(2) does not repackage a contention against removal; the present petition does not challenge removal at all. Because the question of whether Giyosov is entitled to a bond hearing is not one on "which the validity of the final order is contingent,"[37] it is unfit to be later raised in a PFR. Therefore, this Court's review of Giyosov's request for release or a bond hearing does not encourage "piecemeal litigation" but rather serves as his only opportunity for review of a legal question that cannot be channeled into a PFR.[38] For those reasons, *Khalil* is distinguishable and § 1252(b)(9) does not apply.[39]

### B. MERITS OF THE HABEAS PETITION

Turning to the merits, the tools of statutory interpretation weigh against a reading of § 1225(b)(2) that applies to Giyosov. The unambiguous plain meaning of an "applicant for admission" who is "seeking admission" is a noncitizen at a port of entry seeking to cross into the

---

[34] *Id.* at *10 (quoting *Massieu v. Reno*, 91 F.3d 416, 422 (3d Cir. 1996)).

[35] *Id.* at *9-10.

[36] *Id.* at *11.

[37] *Massieu v. Reno*, 91 F.3d 416, 422 (3d Cir. 1996)).

[38] *Cf. Khalil* at *9-11.

[39] As the government notes, the conclusion that *Khalil* is distinguishable is in concurrence with two recent decisions in this District. *See Kourouma v. Jamison*, No. 26-0182, 2026 WL 120208, at *3 (E.D. Pa. Jan. 15, 2026); *Montes Restrepo v. Jamison*, No. 25-6518, 2026 WL 141803, at *5 (E.D. Pa. Jan. 20, 2026).

United States, not someone who has already resided in the United States for multiple years.[40] Rather, the detention of noncitizens like Giyosov who have long been present in the United States "is governed by § 1226(a), which entitles them to a bond hearing before continued detention is permitted."[41] Section 1226(a)'s predominance is further underscored by the titles of § 1225 and § 1226, as well as by agency practice, the rule against superfluity, recent amendments to § 1226, and the canon of constitutional avoidance.[42] As such, § 1225(b)(2) is inapplicable.

Giyosov may be detained under the INA only if, under § 1226(a) and the applicable regulations, he receives a bond hearing and the evidence shows that he presents a flight risk or a risk of endangering the community.[43] The facts here show the opposite. The government does not dispute Giyosov's assertion that he has no criminal history, and there is no record evidence to suggest that Giyosov is likely to flee or endanger the safety of others. Accordingly, a bond hearing is unnecessary, and the Court will order Giyosov's immediate release.[44]

---

[40] *See id.* at *3; *Centeno Ibarra*, 2025 WL 3294726, at *5.

[41] *Yilmaz*, 2025 WL 3459484, at *3; *see also Centeno Ibarra*, 2025 WL 3294726, at *4-7; 8 C.F.R. § 1236.1(c)(8), (d)(1) (stating that bond is available to noncitizens detained under § 1226(a) and that "the immigration judge is authorized to exercise the authority . . . to detain the [noncitizen] in custody, release the [noncitizen], and determine the amount of bond").

[42] *See Yilmaz*, 2025 WL 3459484, at *3; *Centeno Ibarra*, 2025 WL 3294726, at *5-7.

[43] *See Yilmaz*, 2025 WL 3459484, at *3; *Centeno Ibarra*, 2025 WL 3294726, at *4, *8 n.69; 8 C.F.R. § 1236.1(c)(8), (d)(1).

[44] *See Karshranov*, 2025 WL 3188399, at *8 ("[A] habeas court has 'the power to order the conditional release of an individual unlawfully detained—though release need not be the exclusive remedy and is not the appropriate one in every case in which the writ is granted.'" (quoting *Boumediene v. Bush*, 533 U.S. 723, 779 (2008)).

## IV. CONCLUSION

Consistent with this Court's prior decisions, the DHS lacked legal authority to mandatorily detain Petitioner Ismatillo Giyosov without a bond hearing under 8 U.S.C. § 1225(b)(2). The Court will grant his petition. An order follows.